UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PATRICK M. KAZUKIEWICZ,

                         Plaintiff,

         -vs-                                           08-CV-341-JTC

KALEIDA HEALTH,
BUFFALO GENERAL HOSPITAL,

                         Defendant.

In this action, plaintiff Patrick M. Kazukiewicz claims that defendant Kaleida Health terminated his employment at the Buffalo General Hospital on account of his age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq*. Defendant moves for summary judgment dismissing the action.

For the reasons that follow, defendant's motion is granted.

## **BACKGROUND**

Kaleida Health is a not-for-profit healthcare provider with several hospitals and healthcare facilities throughout Western New York, including Buffalo General Hospital (Item 23-13, Roche Decl., ¶ 6). Plaintiff was hired by Kaleida in December 2006 to work as a drywall taper on a renovation project at Buffalo General Hospital's Cardiac Catheterization Lab (referred to in the parties' submissions as the "Cath Lab"). He was 55 years old at the time.

The Cath Lab project at Buffalo General Hospital began in the fall of 2006, and was conducted in phases to accommodate ongoing patient care activities (*id*. at ¶¶ 13-14).

Work on the Cath Lab was covered by a Memorandum of Understanding ("MOU") between Kaleida and the Buffalo Building & Construction Trades Council ("Trades Council"), which requires Kaleida to hire union labor referred through the Trades Council's member unions for certain construction and renovation projects at Kaleida facilities (*see* Item 23-13,¶ 8; Item 23-14, Stevens Decl., ¶ 5). One of the Trades Council's member unions is the International Union of Painters and Allied Trades of America and Canada, District Council #4 (the "Painters' Union"). Plaintiff was a member of the Painters' Union at the time he was hired by Kaleida.

Peter Murphy is Kaleida's Director of Facilities, a position he has held since 2005 (Item 23-12, Murphy Decl., ¶ 1). His responsibilities include oversight of internal construction and renovation projects for Kaleida facilities, including Buffalo General Hospital. According to Mr. Murphy, tradesmen hired for projects covered by the MOU are employed on an "as needed" basis, and are ordinarily laid off as work winds down and the project comes to a close (*see id.* at ¶ 21). Kaleida does not post these positions but rather, in accordance with the MOU, Mr. Murphy solicits job applications for these positions from the Trades Council's member unions. The applications are kept on file by Suzanne Roche, Kaleida's Corporate Employment Supervisor, until positions become available (*see id*. at ¶¶ 16-17; *see also* Item 23-13, ¶¶ 13-14).

Plaintiff submitted a Kaleida Health job application to the Painters' Union in October 2006 (Item 23-11), and it was forwarded to Ms. Roche by the union's Regional Business Representative, Mark Stevens (Item 23-13, ¶ 24). In November 2006, Mr. Murphy advised Ms. Roche that a taper was needed for the Cath Lab project. Ms. Roche identified plaintiff as the next available taper, and processed his application (*id.* at 25).

Plaintiff began working for Kaleida on December 11, 2006. He was part of a crew of approximately 16 other painters and tapers also working on the Cath Lab project. At the time of his hire, Mark Boody was the painting foreman, and in early Spring 2007, Mr. Boody was replaced by Peter Sheehan (Item 23-12, ¶ 24).

In approximately mid-March 2007, Mr. Murphy met with the construction superintendent for the Cath Lab project to review the budget and status of the work. He then met with the individual craft union foremen to inform them that the work force needed to be reduced because the current phase of the project was coming to a close, and was over budget. He also informed Mr. Stevens that at least one taper or painter would be laid off (*see id.* at 25-27). On March 23, 2007, approximately three-and-a-half months after he was hired, plaintiff was informed by his foreman, Mr. Sheehan, that his employment was being terminated (*id*. at ¶ 28).

On April 26, 2007, plaintiff filed a verified complaint of discrimination with the New York State Division of Human Rights ("NYSDHR") alleging that Kaleida discharged him because of his age and replaced him with two younger workers, in violation of the ADEA (Item 23-3). On December 19, 2007, NYSDHR issued a Determination and Order dismissing the complaint, stating as follows:

> After Investigation, and following opportunity for review of related information and evidence by the named parties, the Division has determined that there is NO PROBABLE CAUSE to believe that [Kaleida] has engaged in . . . the unlawful discriminatory practice complained of.
>
> The record does not support [plaintiff]'s allegation that he was terminated because of his age. The evidence . . . shows that, while [plaintiff] states he was replaced by two younger employees, one of the employees is actually older than [plaintiff]. The record shows that [Kaleida] continued to employ[ ] others that were older than [plaintiff].

(Item 23-4).

On February 8, 2008, the U.S. Equal Employment Opportunity Commission ("EEOC") issued a Dismissal and Notice of Rights letter notifying plaintiff that the EEOC had adopted the NYSDHR's findings, and that he had 90 days to bring a lawsuit in federal or state court based on his unlawful discharge claim (Item 23-5). Plaintiff filed this action on May 7, 2008, alleging that he "has been discriminated against by [Kaleida] on the basis of age in violation of the ADEA, through a course of specifically subjecting [him] to disparate treatment by intentionally discriminating against him because of his age and by giving unfounded and inadequate explanations for his termination." Item 1, ¶ 14.

Following discovery, Kaleida moved for summary judgment dismissing this claim on the ground that plaintiff has failed to establish a *prima facie* case of discriminatory discharge under the ADEA. For the reasons that follow, Kaleida's motion is granted.

## DISCUSSION

**I.     Summary Judgment**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The court's role at the summary judgment stage is not to resolve issues of fact, but rather to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. When "little or no evidence may be found in support of the nonmoving

party's case . . . [and] no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Resid. Servs., L.P.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).

The Second Circuit has repeatedly cautioned the district courts about granting summary judgment to an employer in a discrimination case, especially where the employer's intent is at issue. *See, e.g., Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997); *Gallo*, 22 F.3d at 1224; *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829 (1985). Nevertheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact . . . ." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.), *cert. denied*, 534 U.S. 993 (2001). The determination as to whether a disputed fact is material to the resolution of the dispute can be made "only by reference to the substantive law . . . ." *Gallo*, 22 F.3d at 1224.

## II.     The ADEA

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). The class protected by the ADEA is limited to "[i]ndividuals [who are] at least 40 years of age." *Id.* at § 631.

Under Second Circuit precedent, in cases where the plaintiff presents no direct evidence of discriminatory treatment based on age, courts analyze ADEA claims under the three-step, burden-shifting framework established by the Supreme Court in *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (citing *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d. Cir. 2001)). The *McDonnell Douglas* test is "designed to assure that the plaintiff [has] his day in court despite the unavailability of direct evidence." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). This is because proof of intent to discriminate is seldom available, so "plaintiffs in discrimination suits often must rely on the cumulative weight of circumstantial evidence, since an employer who discriminates against its employee is unlikely to leave a well-marked trail, such as making a notation to that effect in the employee's personnel file." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir.), *cert. denied*, 530 U.S. 1261 (2000).

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden to establish a *prima facie* case of age discrimination by showing that:

> (i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination, such as the fact that the plaintiff was replaced by someone "substantially younger."

*Roge*, 257 F.3d at 168 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)). While this burden has often been characterized as "minimal" or "*de minimis*," *see, e.g., Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (citing cases), courts have not hesitated to grant summary judgment in favor of the employer where the plaintiff offered no evidence to suggest that the discharge occurred under circumstances giving rise to an inference of age discrimination. *See Rodriguez v.*

*The Pierre New York*, 299 F. Supp. 2d 214, 218 (S.D.N.Y. 2004), *aff'd sub nom. Rodriguez v. Human Resources Director*, 144 Fed. Appx. 197 (2d Cir. 2005).

In this case, in the absence of any direct evidence to suggest that his age had anything to do with the termination of his brief employment with Kaleida Health, plaintiff submits that the circumstances leading up to his layoff give rise to an inference of discrimination sufficient to satisfy his *prima facie* burden. Specifically, plaintiff claims that shortly before he was fired, Mr. Boody and Mr. Sheehan (the foremen) came on the job site and informed the painting crew that everyone would have to work overtime. Plaintiff commented that the MOU prohibited involuntary overtime, and "[n]ext thing I knew they hired two guys, fired me." Item 23-7, Pltff. Dep., p. 58. According to plaintiff, one of the two employees hired to take his place was substantially younger than him,[1] giving rise to the inference that his comments to the foremen about involuntary overtime were related to Mr. Murphy and construed to suggest that plaintiff was too old to keep up with the work. For his part, Mr. Murphy states that he was "not aware of any such conversation ever having taken place, but even if there was such a conversation . . . it had nothing to do with the layoff decision." Item 23-12, ¶ 33.

Even accepting as true plaintiff's allegations regarding the circumstances of his conversation with Mr. Boody and Mr. Sheehan, and drawing all reasonable inferences in his favor, plaintiff has failed to come forward with sufficient proof at the summary judgment stage to persuade a rational jury that his discharge occurred under circumstances giving

---

[1] As indicated in the text above, plaintiff alleged in both his administrative charge and his complaint in this action that Kaleida replaced him with two younger employees. However, in his memorandum in opposition to Kaleida's summary judgment motion, plaintiff concedes that one of those employees was older than him. *See* Item 22, p. 12.

rise to an inference of age discrimination. First of all, plaintiff does not allege that age was mentioned at any point in his conversation with the foremen, and he has come forward with no admissible evidence to establish any credible connection between the conversation, his age, or his eventual layoff. Assuming the conversation occurred as alleged, it concerned prohibition of involuntary overtime and had nothing to do with plaintiff's age. Indeed, the court's review of the record reveals no mention of plaintiff's age at any point in the circumstances preceding his layoff.

Plaintiff offers only his own subjective belief that his comments to the foremen must have been construed by the employer as an admission that he was too old to work overtime. However, the courts have uniformly rejected the notion that a plaintiff's subjective belief about facially neutral evidence, in the absence of any other indication of discriminatory animus, is sufficient to create a genuine issue of fact regarding an employer's motives. *See, e.g., Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997) (plaintiff's "purely speculative" suggestion that manager preferred younger workers insufficient to support inference of age discrimination), *cert. denied*, 525 U.S. 936 (1998); *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (plaintiff's conclusory allegations suggesting a causal connection between her complaints about a fellow employee and her termination did not create material issue of fact regarding employer's motives); *Rivera v. Potter*, 2005 WL 236490, at *5 (S.D.N.Y. Jan. 31, 2005) (plaintiff's subjective belief concerning defendant's motivation behind his termination, standing alone, insufficient to survive summary judgment); *Beshty v. General Motors*, 327 F. Supp. 2d 208, 216-17 (W.D.N.Y. 2004) (plaintiff's perception that supervisor's facially

neutral statement about plaintiff's inability to fit defendant's corporate "culture" not probative of discriminatory animus absent some other evidence of race-based bias).

In addition, employment discrimination case law recognizes that when the same employer hires a person already within the protected class, and then later fires that same person, an inference arises that the employment action was not motivated by discriminatory animus, since "it is difficult to impute to [the employer] an invidious motivation that would be inconsistent with the decision to hire." *Grady*, 130 F.3d at 560. The "same actor inference" is especially strong when the firing occurred "within a relatively short time after the hiring . . . ." *Carlton*, 202 F.3d at 137 (citing *Grady*, 130 F.3d at 561 (eight days between hiring and firing provides strong inference of nondiscriminatory motivation)); *see also Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000) (fact that plaintiff was fired by same man who had hired him three years earlier at age 60 found to be "highly relevant in adjudicating a motion for summary judgment on an ADEA claim"); *Velez v. SES Operating Corp.*, 2009 WL 3817461, at *10 (S.D.N.Y. Nov. 12, 2009) ("[W]here fewer than three months had elapsed since plaintiff was hired, the same actor inference is a 'highly relevant' factor in the Court's [*prima facie*] inquiry.").

In this case, the record is clear that the same actor–Kaleida Health–hired plaintiff in December 2006 when he was already well within the protected class, and discharged him in March 2007, approximately three and a half months later. These circumstances give rise to a strong inference that plaintiff's discharge was not motivated by discriminatory animus. To avoid summary judgment at the *prima facie* stage, plaintiff must come forward with at least some showing of proof to support "the strong case of bias necessary to

overcome this inference." *Coghlan v. American Seafoods Co. LLC.*, 413 F.3d 1090, 1098 (9th Cir. 2005).

Beyond his conclusory allegations regarding the circumstances of his conversation with his foremen, plaintiff offers only the fact that Kaleida hired and retained a younger employee, Kenneth Heckler (age 43) just three days prior to plaintiff's layoff. However, Kaleida has submitted several layers of proof sufficient to neutralize any inference of discrimination that could be drawn from Mr. Heckler's hiring. For example, it is undisputed that at the same time Mr. Heckler was hired Kaleida also hired and retained Dennis Caldwell, who was 58 years old–older than plaintiff.[2] *See Palmer v. Ultimate Technology, Inc.*, 2007 WL 2077645, at *3 (W.D.N.Y. July 13, 2007) (plaintiff who was 41 years old at time of his termination failed to show circumstances giving rise to an inference of age discrimination because his replacement was 44 years old when hired); *see also Tarshis v. Riese Organization*, 195 F. Supp. 2d 518, 526 (S.D.N.Y. 2002) ("When a plaintiff has been replaced by someone older than himself, maintaining an age discrimination claim becomes rather difficult because a fact-finder can draw no reasonable, immediate inference of discrimination") (citing cases), *aff'd*, 66 Fed. Appx. 238 (2d Cir. 2003). As stated in *Leonard v. Gould, Inc.*, 744 F. Supp. 1398, 1399 (D.M.D. 1990):

> Common sense teaches that one who intends to discriminate against an older person because of age does not replace the victim with a still older individual. The ADEA is not a vehicle by which any displaced worker over 40 may have a federal judge and jury review the merits of his or her job performance or the demerits of his or her termination; age-intentional discrimination must be shown, which is not the case where the worker is replaced by an older employee than he.

---

[2] As noted in the background discussion in the text herein, this was the primary reason given by the NYSDHR for dismissal of plaintiff's administrative claim. *See* Item 23-4.

In addition, the record shows that both Mr. Caldwell and Mr. Heckler were hired as painters, with the title "Painter Basic Brush Roller–Journeyman," whereas plaintiff held the separate and distinct position of "Painter Taping Drywall–Journeyman," which pays more than the painter position due to the more specialized skills required for drywall taping. *See* Item 23-8, Murphy Dep., p. 29; *see also* Item 23-9, Employee List. According to Mr. Murphy, these employees were not hired to replace plaintiff, but rather were hired to paint the Cath Lab walls after the drywall taping phase was completed. *See* Item 23-12, Murphy Decl., ¶ 36.

Defendant has also submitted statistical data demonstrating that as of March 23, 2007 (plaintiff's termination date), Kaleida Health employed approximately seventy workers referred by the Trades Council's member unions, 56 of whom were age 40 or older–*i.e.*, members of the class protected by the ADEA. *See id.* at ¶ 44; *see also* Item 23-9. With regard to just the Painters' Union, as of that same date approximately seventeen of the twenty-two workers employed by Kaleida Health upon referral by the Painters' Union were age forty or older. Item 23-12, ¶ 45; Item 23-9. The data also shows that during the three-and-a-half month period following plaintiff's layoff, Kaleida laid off an additional 17 workers, 11 of whom were under age 40, and all but one of whom were younger than plaintiff. *See* Item 23-12, ¶ 39; Item 23-9. This undisputed evidence provides further support for the inference, already strong, that Kaleida's employment action was not motivated by discriminatory animus. *See, e.g.*, *Deebs v. Alstom Transp., Inc.*, 346 Fed.Appx. 654, 657 (2d Cir. 2009) (plaintiff did nothing to counter employer's showing that reduction in force left several ADEA-protected employees in their jobs, while claiming the jobs of several

younger employees, which the court found to be "highly indicative of a lack of discriminatory intent") (citing *Parcinski v. Outlet Co.*, 673 F.2d 34, 36-37 (2d Cir. 1982) (fact that 75 percent of work force left after force reduction was under ADEA protection demonstrates lack of age-based animus), *cert. denied*, 459 U.S. 1103 (1983)).

Based upon this record, the court finds that plaintiff has failed to come forward with sufficient evidence to suggest that his layoff occurred under circumstances giving rise to an inference of age discrimination. Because plaintiff cannot satisfy this essential element of his *prima facie* case, no rational jury could find in his favor on his ADEA claim. Accordingly, there is no genuine issue of fact remaining for trial, and Kaleida Health is entitled to summary judgment as a matter of law.

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Items 13, 23) is granted, and plaintiff's complaint is dismissed in its entirety, with prejudice.

The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: July 22, 2010
p:\opinions\08-341.jul162010